# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY.

AT FEBRUARY TERM, 1856.

---

### THE STATE (GLEDHILL, PROSECUTOR,) *vs.* THE GOVERNOR.

1. A *mandamus* will not be issued to an officer, requiring the performance of an official duty, unless it appear affirmatively by the evidence that the officer has refused to do the act required.

2. The act to regulate elections requires that the governor shall issue a commission to the county clerk and surrogate, upon the same evidence as is designated in the case of other county officers.

3. Where the governor is required by law to issue a commission, in accordance with the determination of the board of county canvassers, the court will not award a *mandamus* directing a commission to be issued in conflict with such determin·tion, although it appear affirmatively that the decision of the board of county canvassers was based upon illegal evidence, and is contrary to the truth of the case.

4. Statements accompanying the official certificate of the board of county canvassers constitute no part of their return. They are unauthorized by law, and form no ground upon which a commission can be issued.

5. The board of county canvassers have no authority to examine the regularity of the proceedings of the township board, or to look behind the official returns made by them.

6. All evidence before the board of county canvassers, outside of the official returns, made as prescribed by law, is unauthorized and illegal.

7. The board of county canvassers are to make their statement of the result, and their determination as to the persons who shall be elected, upon, and only upon, the statements which are produced and laid before the board, as directed in the act.

8. The action of the board of county canvassers does not conclude or prejudice the right of a party to the office, if elected by a majority of votes, though it may, in the first instance, deprive him of the right to the commission.

9. The court has no power to award a *mandamus*, either to compel the execution of any duty enjoined on the executive by the constitution, or to direct the manner of its performance.

This cause came before the court upon the argument of the following rule, entered on the fifteenth of November.

New Jersey Supreme Court, November term, A. D. 1855.—The State, *ex relatione*, William Gledhill *v.* His Excellency Rodman M. Price, governor of the state of New Jersey.

Upon application to the court on behalf of William Gledhill, who claims to have been elected surrogate of the county of Passaic, and to have received a majority of the votes cast for that office, and it being alleged that the office of surrogate of said county is vacant, and that his Excellency Rodman M. Price, governor of this state, has, upon demand made, refused to sign and issue a commssion to said William Gledhill, it is ordered that said Rodman M. Price do show cause, on the 27th day of November, instant, before this court, at ten o'clock A. M. of that day, why a *mandamus* should not issue against him, commanding him to sign and issue such commission. And it is further ordered, that a copy of this rule be served on said Rodman M. Price, and also on John M. Gould, esquire, who claims to have been elected to said office, in five days from the date of this rule, and that both parties have leave to take depositions, to be used on the argument of this rule to show cause, without prejudice to the rights of the said John M. Gould.

On motion of A. O. Zabriskie, attorney for William Gledhill.

In pursuance of this rule, depositions were taken and exhibits made by both parties. At the same time the following rule was entered.

New Jersey Supreme Court, November term, A. D. 1855.—The State (William Gledhill, prosecutor,) *vs.* the Clerk of the county of Passaic.—Rule to allow *certiorari.*

It being alleged that the board of canvassers of the county of Passaic, in canvassing the votes, and in their determination of the result of the election, held in the county of Passaic on the first Tuesday of November, instant, for surrogate of said county and other·officers, have erred, it is ordered that a certiorari be allowed, directed to said clerk of said county of Passaic, to remove into this court the statement and determination of the result of said election, and the returns on which the same are founded, and all things touching and concerning the same, and that the plaintiff and John M. Gould, esquire, who claims to have been elected to the office of surrogate by said returns and determination, have leave to take depositions, to be used on the hearing of said *certiorari,* without prejudice to the rights of the said John M. Gould.

On motion of A. O. Zabriskie, attorney of plaintiff.

The *certiorari* was duly issued and returned. With the *certiorari,* the clerk returned a transcript of a statement of the result of an election held in the county of Passaic, on the 6th of November, A. D. 1855, made by the board of county canvassers on the 10th of November, 1855.

A transcript of a statement of the result of said election held in the west ward of the city of Paterson, made to the said board of county canvassers, together with their reasons for rejecting the same.

A transcript of a statement of the determination of the said board of county canvassers relative to the result of the county election.

Transcripts of the statements of the results of said election in the several townships and wards in the said county.

A transcript of a paper deposited in the clerk's office, by the clerk of the west ward of the city of Paterson, on the 9th of November, A. D. 1855, before the meeting of the board of county canvassers.

A copy of a dissent from the determination of the board of county canvassers, filed in the office of the clerk of said county, signed by three members of said board, with their reasons for such dissent. These several papers were used upon the argument. The poll book of the west ward of the city of Paterson, the original ballots cast, and the tally lists made in canvassing the votes, were also exhibited.

From these various exhibits, and from the depositions in the cause, the following facts were claimed by the applicant to have been established.

The election in the west ward of the city of Paterson was conducted with regularity until the close of the poll. The poll was closed at the usual hour, the book signed, the votes counted, and the ballots strung. The result was not publicly announced by the judges. The clerk added up the votes, and stated the result publicly in the hearing of the judges. No certificate of the result of the election was made out that night. The clerk left immediately after the count. It was understood that the certificate was to be made out on a subsequent day. One of the judges (the clerk being absent) took charge of the ballot box and of the three keys of the box. About eight o'clock the next morning, the clerk of election received from the judge the ballot box and the keys. He took it to his office, opened it, and commenced making out a certificate to be signed by the board of election, but did not complete it at that time. Complaints having been made to the clerk, of the mode in which the tally had been kept when the votes were counted, he applied to one of the judges, and requested that a recount should be made. On Thursday

evening, the second day after the election, the three judges met at the house of the clerk, and made a recount of the ballots ; tallies being kept by the clerk and by the individual at whose instance the recount was made. This second count gave to Gould seventeen votes less, and to Gledhill eight votes more, than the original count, the effect of which was to alter the result of the election in the county.

The return was made out, in accordance with this second count, on Thursday night, and signed by all the judges, and an order made that one of their number should lay it before the board of county canvassers on Friday. A statement of the result, according to the first count, had been previously made out by the clerk (though not signed by the judges), which was taken by him to the clerk's office, and exhibited to the county board.

The return, signed by the judges, was duly presented to the board of county canvassers by one of their number, together with a statement of all that had transpired. The board of county canvassers rejected the return, and made up their return and determination of the result of the election, excluding the vote of the west ward of the city of Paterson entirely from the count. Had the vote of that ward, as returned by the judges, been counted, the result of the election would have been different. Gledhill would have been elected surrogate. No person interfered with the ballot box from the close of the poll, on Tuesday night, until the ballots were finally counted, on Thursday night. A certificate of the result of the election in the west ward was transmitted to the governor, with the return of the county canvassers,

The title of the applicant to the writ of *mandamus* and the validity of the writ of *certiorari* were, by consent, argued together. By order of the branch court, the case came on to be heard before the main court (the CHIEF

JUSTICE, and ELMER and HAINES, Justices,) on the 27th of November, 1855.

*Barkalow*, for the applicant.

The board of county canvassers erred in rejecting the return of the west ward of Paterson. It was brought before them duly signed and verified. The only objection is a mere irregularity in conducting the election. It was the duty of the board to have received and counted the vote. Their power is ministerial only, not judicial. *Rev. Stat.* 431, § 76, 78.

II. If the court do not receive the certificate of the board of election as conclusive, they will look in the facts, and ascertain if there was any reason for its rejection. The evidence shows that the certificate gives the true result. The ballots and tallies are before the court. There is no attempt to impeach either the judges or the clerk.

III. A *mandamus* is the proper remedy to compel the issuing of the commission. 3 *Burr.* 1266, 1420; 1 *Cranch* 137; 3 *Halst.* 208; 3 *Hill* 42; 20 *Pick.* 495; 5 *Hill* 628; 6 *East* 356, 360.

The decision of the canvassers is merely ministerial, and can be inquired into in any case where the ends of justice require it. 4 *Cowen* 323; 20 *Wend.* 14; 3 *Hill* 42; 14 *Barb.* 290, 311; 1 *Manning* 362; 13 *Alabama* 805.

The statute regulating the mode of conducting the election is directory merely. 14 *Barb.* 290; 3 *Hill* 42; 8 *Cowen* 102; 20 *Wend.* 12; 5 *Denio* 409; 14 *Barb.* 298.

*Woodruff*, for the defendant.

Three questions arise upon this application. Can ballots put into the ballot box after the close of the poll elect a man to office ? If not, what rule or evidence does the law prescribe, to ascertain what ballots were put in on the day of election? Can this rule be entirely disregarded, and the statute treated not as a law, but as an advisory opinion?

The votes were counted at the close of the poll, and the

result publicly announced by the clerk, in the hearing of the judges, without their dissent, and without objection to the fairness of the count. The clerk is the organ of the board. What he does in their presence and with their assent is their act. The votes having been counted, and the result publicly announced, there cannot be a second count. The power of the board is exhausted. After the box and keys were delivered into the hands of the clerk, the judges could not certify the result upon their knowledge; it must be upon hearsay merely. The second count was illegal, and all the proceedings founded upon it are also illegal. *Nix. Dig.* 234, § 54, 55.

Though the vote of one district be rejected, or the ballot box destroyed, the result of the election should nevertheless be declared. 3 *Hill* 47. The regular determination of the canvassers is conclusive. 5 *Hill* 616, 623, 626; 14 *Barb.* 203.

A *mandamus* is not a proper remedy. All this proceeding can do, is to give a technical advantage to the successful party. It settles no right. 4 *Cowen* 223.

A mistake in the proceeding of the county canvassers, it is admitted, may be shown on a proceeding by *quo warranto*, but not on application for *mandamus*. The return of the canvassers is conclusive in every case, except on a proceeding by *quo warranto*. 20 *Wend.* 14; 5 *Denio* 409; *Nix. Dig.* 224, § 55, 58, 76, 96.

The paper purporting to be a statement from the west ward was no record or legal evidence. 1 *Greenl. Ev.* § 494; 2 *Cowen & Hill, notes* 1046, 1047, 1048. And whether a record or not, may be inquired into by any tribunal before whom it is produced. 15 *Johns. R.* 143; 5 *Wend.* 148, 158.

The statute intended to protect the ballot box against the opportunity of corrupting it, and its directions as to this are mandatory, not merely directory. The putting in of ballots, counting, announcement, &c., must be public. *Election law* § 36, 38, 39, 42, 63. Until the public an-

nouncement is made, and statement signed, the ballots or keys must be kept by the judges. § 60. Whether the statement was made "as is directed by the act," the county canvassers were bound to inquire. § 68, 78.

Whether the decision of the county canvassers was correct or not, it is final and conclusive, at least, till overcome in an information, where the very right, as it is shown in the whole election, may appear. 3 *Brevard* 264, 491; 1 *McCord* 52; 17 *Wend.* 81; 20 *Wend.* 12; 5 *Hill.* 616; 2 *Hill* 45. This should be so on grounds of public policy. Had the judges done their duty, Gould would have been elected by the statement they would have signed according to law. Is he to lose by their disregarding the law? A critical examination shows this was the clear intention of the legislature.

Section 78 says, the board shall make a statement and determination, as to council, assessors, &c., "in all other cases," that is, as to electors, &c., statements of the result only, and these are to be made only upon the statements laid before them. But even as to this, the "statements" must be made "as is directed by the act," and "according to the law." Section 96 makes the determination *prima facie* the evidence of the right of a member of assembly. Section 58 applies the provisions, as to the "determination," to surrogates, that is, it says, in substance, the certificate shall be *prima facie* evidence of the right; shall entitle him to the office until he is legally ousted. Section 80 recognises the same doctrine. It is to be filed as an "official paper." For what purpose? Surely to be "official" evidence for the governor to act upon.

The evidence taken shows a strong probability, to say the least, that spurious ballots were put in the box after election, and entered into the count made on Thursday night. If ballots thus put in, could be made to count legally in the election of an officer, the election of a president might depend on the honesty of the judge who made

the figures. If the evidence shows there is a doubt as to the merits, the court will not interfere by *mandamus.* 3 *Burr.* 1452; 10 *Missouri* 117.

The reason assigned by the county canvassers for their decision, even if a bad reason, will not impair the effect of their decision, and the paper sent up by them stating that reason, or rather a portion of the evidence constituting it, is no evidence, for it is an extra-official certificate. 1 *Greenl. Ev.* § 485, 498; 2 *Cowen & Hill, n.* 1046; 11 *Wend.* 804; 7 *Watts & S.* 14; 1 *Pike* 232; 5 *Missouri* 403.

A *mandamus* will not be granted to a governor, to command him to discharge any duty devolved upon him by the constitution, his duties under which he discharges under the responsibilities of an oath, subject only to impeachment for wilful errors, and to the people for his blunders. 1 *Pike* 57; *Federalist* 47, 48, 49, 50, 51.

*Dayton,* for defendant.

The object of the *certiorari* is to bring up the certificate of the board of county canvassers, (with the accompanying papers) and to set the same aside. This being done, it is supposed that the *mandamus* may go at once to the governor, to issue a commission to the applicant. The rules were ordered expressly without prejudice to the question of right.

The first question is as to the propriety of the remedy. Does the *certiorari* lie? It does not lie to bring up acts ministerial only, and not judicial. 1 *Harr. Dig.* 517; 5 *Petersd.* 150; 8 *Petersd.* 455, 666; 5 *Barb. Sup. Co. R.* 43; 3 *Hill* 42; 23 *Wend.* 228; 4 *Cowen* 297.

The acts sought to be relieved against were ministerial only, being a mere declaration of the number of votes by the returning officers. But it is not necessary for us to say that our statute makes the duty of the canvassers ministerial only. There is no case in our books which sustains the propriety of the proceeding by *certiorari.* In

*The State* v. *Anderson, Coxe* 318, the question of the jurisdiction of the court, on *certiorari*, to set aside an election, was not decided. The court refused to set aside the election on the ground of public policy.

In *The State* v. *The Justices, &c., of Middlesex, Coxe* 244, the Supreme Court, on *certiorari*, declared an election void. But that decision was reversed in the Court of Appeals. *Coxe* 255, *note*.

In *The State* v. *Wood*, the Supreme Court refused to allow a *certiorari*, to review the legality of an election for the location of a court house in the county of Camden. The Court of Appeals quashed the writ of error from that decision. 1 *Zab.* 682; 3 *Zab.* 560.

The allowance of a writ of *certiorari* rests in the sound discretion of the court. A court will not, by this writ, interfere with a popular election. Mischievous consequences must inevitably ensue. Public inconveniences will result from offices being left vacant, or the result left hanging in suspense.

The election law, in many of its provisions, makes the office of the board of county canvassers *judicial*. They not only count, but they canvass and estimate the vote. The township boards are required to deliver the original statement of the result, which shall have been made, certified, and subscribed, as before directed, to one of the judges. § 63. The county board are to canvass, estimate, and determine the vote, and to make a statement of their determination. Any member of the board who dissents from such decision may protect himself against the consequences of such decision, in the mode prescribed in the act. § 73, 76, 88, 91, 95.

The object of this proceeding is to determine who is entitled to the commission at the hands of the governor. It is insisted, by the applicant, that the county canvassers cannot look behind the certificate of the township board. No matter what illegalities, frauds, or violations of the

ballot box are known to exist, the certificate, it is said, is final.

If this be so, it is manifest that the same rule applies to the county canvassers. Their determination is equally final, and must be binding, so far as it respects the power to issue the commission. If their decision is binding, and no commission be issued, the *mandamus* can only enforce a compliance with that decision.

The only remedy of the adverse claimant would then be by a *quo warranto*. But that merely removes the incumbent, and does not put the claimant into the office. 20 *Pick.* 484.

Suppose the court set aside the action of the county canvassers upon *certiorari*, can they require the canvassers to recount the vote, and make a new determination and certificate? or can the governor look into the result at the ballot box, and constitute himself a tribunal of review?

A *certiorari* does not lie to test the result of a popular election before this court. The governor must act upon the return of the certifying officers, and issue a commission accordingly. The remedy of the claimant is by *quo warranto*. The certificate and determination of the board of canvassers is final, except on a direct proceeding by *quo warranto*. 20 *Wend.* 12.

Upon *quo warranto*, the relator must show title in himself. 5 *Denio* 409; 1 *Penn.* 307; 6 *Iredell* 155.

*Mandamus* is not the appropriate remedy to try title to office. 5 *Hill* 616.

A *mandamus* will not lie to the state executive, a co-ordinate department of the government. The performance of his duties cannot be enforced by *mandamus*. There is no trace of an authority for such proceeding.

*Zabriskie*, for applicant, in reply.

Two questions are presented for consideration. 1. Is

Gledhill duly elected. Is this court competent to give relief.

The error of the board of canvassers, of which we complain consists in rejecting a perfectly legal return. They are required to make their determination from the certificate of the election boards, and not otherwise. All proceedings of inferior tribunals may be reviewed by *certiorari*. The board of county canvassers is an inferior tribunal. Their decision may be reversed on *certiorari*.

The return to the *certiorari* shows, that the board of election of the west ward of Paterson made their return, regularly signed by all the judges, to the board of county canvassers. That board were bound to make their determination upon that return. *Nix. Dig.* 230, § 78

The provisions of the act in regard to the mode of conducting the election are directory only. 3 *Hill* 47 ; 14 *Barb.* 259, 272, 290, 297.

Admitting a mistake to have been committed by the election board, the canvassers had no right to go behind the return.

But there was no error. If the election board discovered a mistake in the first count, they were bound to correct it. They are to decide, on the night of the election, what votes are admitted or rejected, and to declare the result. § 54. They are not required to certify the result so declared, or to make out their certificate on the same night. § 57. If a mistake is discovered the next day, the board are not to certify falsely.

The canvassers had no right to inquire beyond the certificate. Having inquired, they erred in their decision. The deviation from the requirement of the act did not avoid the return. All the judges swear that the box was kept inviolate.

The governor must commission whoever is elected. He is required, by the law and by the constitution, to commission every officer elected by the people. It is a mere

ministerial act. He is directed to do a particular act in a particular way; *quoad hoc*, he is a mere ministerial officer. When performing executive duties, he exercises discretion.

Gledhill is elected surrogate of Passaic. The election of an officer consists in his receiving a majority of the votes of the electors. The statute declares that the person receiving the greatest number of votes is elected. § 53.

When that fact appears by competent evidence, the person is elected. 1 *Rev. Stat. N. Y.* 144, § 10; 4 *Cowen* 323; 8 *Cowen* 102; 20 *Wend.* 14; 3 *Hill* 43; 14 *Barb.* 311; 1 *Manning*, 362; 13 *Alabama* 805.

Is *mandamus* a proper remedy? A *quo warranto* will not lie for an office that is vacant, nor will it induct the applicant into office. 20 *Pick.* 495.

When the office is vacant, the cases agree that a *mandamus* is the proper remedy, even where the court have to inquire into the right. 3 *Burr.* 1266, *Rex.* v. *Baker*; *Ibid* 1330, *Rex* v. *Harris*; 1 *Cranch* 137; 3 *Halst*, 208.

Cases all admit that where there is no other remedy the relief must be by *mandamus*.

The Chief Justice delivered the opinion of the court.

An application is made to the court for a rule upon the governor of the state, requiring him to show cause why a *mandamus* should not be awarded, commanding him to issue a commission to the applicant, as surrogate of the county of Passaic. As important public interests were liable to be affected by any delay on the part of the court in announcing the decision, it was intimated at the last term, upon the close of the argument, that the application would be denied. The importance of the questions involved, and the learning and research manifested on the argument, render it proper that the grounds of the decision should be distinctly stated.

The motion is denied, *first*, because there is no evidence before the court, that a commission has been demanded

by the applicant, or that the governor has refused to issue it. This fact should affirmatively appear as the foundation of the application. The facts, as they appeared before the court, are, that there are two claimants to the office; one holding the decision of the board of county canvassers in his favor, the other claiming to have a majority of the legal votes cast at the election. The parties agreed to submit the legal questions involved, to the decision of this court, the governor postponing his action to afford an opportunity for that purpose. While we cheerfully concede that the spirit which prompted the arrangement is worthy of commendation, as alike liberable and honorable, we cannot close our eyes to the fact, that it does not present a proper case for a writ of *mandamus*. It is an effort, not to constrain the doing of an act which the governor has refused to perform, but to obtain by amicable arrangement the opinion of this court, upon a disputed question of law touching the result of a popular election. It is obvious, too, that an answer to the rule to show cause, if made fully according to the truth of the case, will exhibit the utter futility of the whole proceeding. The court are not the constitutional advisers of the executive, and it is neither consistent with law nor propriety, that a decision pronounced upon an important question of public right, in a proceeding instituted ostensibly for the redress of a private injury, should assume the character, and perform the office, of a mere advisory opinion.

But if this difficulty, under the peculiar circumstances of this case, should be regarded as formal, rather than meritorious, and as presenting no insuperable objection to the action of the court, the *mandamus* must be denied, upon the ground, that the applicant, upon the facts disclosed, is not entitled to the relief sought for. The case made on the part of the applicant, assuming it to be fully established by the evidence, is, that the applicant, according to the returns made by the boards of election of the

several townships to the board of county canvassers, received a higher number of votes for the office of surrogate than any other candidate, and was consequently entitled to the determination of the board of county canvassers in his favor; that the board of county canvassers made their statement of the result of the election, and their determination as to the person elected, contrary to the truth of the case, upon incompetent and illegal evidence, and not upon, and only upon, the statements presented and laid before the board, by members of the various township boards, as prescribed by law. It is admitted that the official certificate of the result of the election, made by the board of county canvassers, shows that another individual, and not the applicant, received the highest number of votes. It is also conceded that, by the determination of the board of county canvassers, it was determined that another individual, and not the applicant, was duly elected to the office of surrogate. The certificate of the result of the election and the determination of the board of canvassers, verified as required by law, have been filed in the office of the clerk of the county, and also in the office of the secretary of state. It is sought, by the applicant, to avoid that certificate and determination of the board of county canvassers, as illegally made, and to have a commission issued to the party having the highest number of votes according to the returns of the boards of election of the several townships, and according also, as is contended, to the truth of the case, as it appears upon the evidence before the court.

It is made a question whether, by law, the board of county canvassers are empowered to determine who is elected surrogate or clerk, and whether it is, by the act, made the duty of the governor to issue a commission to those officers, in accordance with such determination of the board. By the 76th and 77th sections of the election law, the board of county canvassers are required, in case

of an election for member of the senate, members of the general assembly, sheriff and coroners, to determine who are duly elected, and to make a certificate of their determination. By the 78th section of the act, they are required, in the case of an election for a member of the senate, members of the general assembly, sheriff and coroners, or any of them, to make the statement of the result of the election, and their determination as to the persons elected, and *in all other cases* to make the statement of the result of the election, upon, and only upon, the statements which shall be produced and laid before the board, as directed in the act. The succeeding sections direct that, in the case of an election of a member of the senate, members of the general assembly, sheriff and coroners, or any of them, the clerk of the county shall make copies of the determination of the board, and the certificate appended thereto, and shall deliver a copy, duly certified, to each person elected, and shall also transmit a similar copy, duly certified, to the secretary of state, to be filed in his office as an official paper. By the 81st section it i enacted, that when any person, who shall at such election have been elected to the office of sheriff or coroner, shall produce before the governor such a certified copy as is above mentioned, to which there shall be added the certificate of six freeholders of the county in which such election shall have been held, certifying that such person has been duly elected, the governor shall forthwith commission such person as such sheriff or coroner. These sections make provision for a certificate of the determination, by the board of county canvassers, of the persons elected, only in the case of an election of members of the legislature, sheriff and coroners. And the governor is required to issue a commission in accordance with such determination, only in the case of sheriff and coroners. They are silent as to the office of clerk and surrogate. These sections are a substantial transcript from the act of 1839,

which was passed before the offices of county clerk and surrogate were made elective by the people. They specified all the county officers which were then chosen by popular election, and declared upon what evidence the governor should act in issuing commissions to all such county officers as were required to be commissioned by him. The act of 1846 has adopted these sections without .material alteration, and has also retained the form of the certificate of the result of the election, and of the determination of the board of county canvassers.

But, by the 58th section of the act of 1846, it is enacted that the provisions of the act relative to the statement of the result of the election by the board of county canvassers, and also relative to the statement of the determination of said board, shall apply to the votes for clerk and surrogate. There seems, however, to be no provision in the act, expressly requiring the governor to issue his commission in accordance with such determination, in the case of the election of clerk or surrogate. Yet we think that the sound construction of the statute requires that such interpretation should be adopted, and that the governor is required to issue a commission in the case of the election of county clerk and surrogate, upon the same evidence as is designated in the case of other county officers. The act has established two tribunals, whose province it is to determine upon the election of all state and county officers chosen by the people. The result of the election of all county officers is submitted to the determination of the board of county canvassers. The result of the election of the governor, members of congress, and electors of president and vice president, is submitted to the determination of the board of state canvassers. The powers of these boards, within their respective jurisdictions, are substantially the same. They officially determine what persons are elected to office, and the governor is required to issue commissions in accordance with such

determination. It is obvious, from the whole scope of the
act, that it was the design of the l egislature to specify, in
all cases, the evidence upon which commissions for office
hould issue. They have required that the same evidence
hall be furnished of the election of clerk and surrogate,
as of other county officers. They have required that evi-
dence to be filed in the office of the clerk of the county,
and in the office of secretary of state as an official paper,
and to be furnished to the persons elected. A sound and
liberal construction of the act requires that commissions
should issue in all cases upon the same evidence. Upon
any other construction, there is no designation whatever
of the evidence upon which a commission in the case of
the election of clerk or surrogate shall issue, nor is there
any provision made for procuring competent evidence of
the election of these officers. The act clearly contemplates,
and its policy requires, that the commission of the county
clerk and surrogate should issue in accordance with the
same rule which applies to other county officers commis-
sioned by the governor. Such we understand to have
been the uniform practice under the act.

If this be the true construction of the act, it is clear
that the application for a *mandamus* must fail. The go-
vernor is required by law to issue the commission in ac-
cordance with the determination of the board of county
canvassers. That determination is in favor, not of the ap-
plicant, but of another individual. We are asked to direct
a commission to be issued in direct conflict with the plain
requirements of the act.

The statements accompanying the official certificate of
the board of county canvassers are not authorized by law,
and constitute no part of the return. They must be re-
jected as mere surplusage. They form no ground upon
which the governor could act in issuing the commission.

The board of county canvassers clearly erred in the
grounds of their determination. They had no authority

to examine the regularity of the proceedings of the township boards, or to look behind the official returns made by them. All the evidence produced before them, outside of the official returns made as prescribed by laws, was unauthorized and illegal. It could constitute no legitimate basis for determination. The statute is too clear to admit of misconstruction. It prescribes, with minuteness and precision, the mode in which the judges of election in the township shall canvass and estimate the votes, and make and return their statement of the result to the county board. It directs that the board of county canvassers shall make their statement of the result, and their determination as to the persons who shall be elected, upon, and only upon, the statements which shall be produced and laid before the board, as directed in the act. The legitimate ground of their decision is not only pointed out, but every other is expressly excluded.

That this action of the board does not conclude or prejudice the right of the party aggrieved to the office, if elected by a majority of votes, is conceded. But the question now is, not who is entitled to the office, but who, by the terms of the act, is entitled, in the first instance, to the commission. If the act makes it incumbent upon the executive to issue a commission upon certain specified proof, this court, under color of trying the final right to the office, cannot instruct him to disregard the plain requirement of the statute.

In the third place, we are of opinion that the *mandamus* must be denied, upon the broad ground that this court has no power to award a *mandamus*, either to compel the execution of any duty enjoined on the executive by the constitution, or to direct the manner of its performance. The exercise of such power would be an unwarrantable interference with the action of the executive within his appropriate sphere of duty. The constitution has divided the powers of government into distinct departments, and

cautiously provided for their independent exercise. It has expressly forbidden any person belonging to, or constituting one of these departments, from exercising any of the powers properly belonging to either of the others, except as expressly provided in the constitution itself. It has vested in the governor all the executive powers of the government. Among the powers specifically enumerated, is that of issuing commissions under the great seal of the state to all such officers as shall require to be commissioned. The issuing of the commission under the constitution of this state is clearly an exercise of political power. In regard to any other executive duty prescribed by the constitution, it has never been pretended that the judiciary has the power to enforce its execution, or to direct the manner of its performance. The constitution requires that the governor is to take care that the laws be faithfully executed; can the judiciary compel the performance of this duty? He is required to sit as a member of the court of pardons; can the judiciary interfere if the duty is neglected? Why is it that in this particular branch of executive duty, (the issuing of commissions) and in no other, the court may interfere? It is said that the granting of a commission is a mere ministerial act; but is it, therefore, less an executive act? As contradistinguished from judicial duties, all executive duties are ministerial. The idea seems to be entertained that the duty of the executive becomes ministerial, when no discretion is left as to the manner of its performance, and that in such case the court may interfere to compel its performance. If this be the test, it follows, that wherever the executive duty is clear the judiciary is authorized to interfere; but in all cases of doubt or difficulty, or uncertainty, the responsibility of acting rests upon the executive alone. In many cases the law allows the executive no discretion. The duty must be performed in strict accordance with the law, but this court has not, therefore, power to order the

duty to be performed. All executive duty is required to be executed by a higher authority than the order of this court, *viz.* by the mandate of the constitution. The absence of discretionary power cannot change the character of the act, or warrant the interposition of the judiciary.

If by ministerial duties, are meant duties performed by one acting under superior authority, or not with unlimited control, none of the duties of the executive are ministerial. All the °powers conferred by the constitution upon the governor are political powers, all the duties enjoined are political duties. Touching all the powers conferred on the executive by the constitution, he is entirely independent of the control of the judiciary, being responsible to the people alone, and liable to impeachment for misdemeanor in office.

While it is the acknowledged duty of courts of justice to exert all their appropriate powers for the redress of private wrongs, it is no less a duty sedulously to guard against any encroachment upon the right, or usurpation of the powers, of the co-ordinate departments of government. In the delicate and complicated machinery of our republican system, it is of the utmost importance that each department of the government should confine itself strictly within the limits prescribed by the constitution.

It is obvious that the exercise of the power now invoked, will have a direct and immediate tendency to bring the executive and judicial departments of the government into conflict. It cannot alter the principle, that in the present case the governor assents to the application. We have Mr. Jefferson's authority for saying, that if the Supreme Court had granted a *mandamus* in the case of *Marberry* v. *Madison*, he should have regarded it as trenching on his appropriate sphere of duty ; that he had instructed Mr. Madison not to deliver the commission, and that he was prepared, as president of the United States, to maintain his own construction of the constitution with all the

powers of the government, against any control that might be attempted by the judiciary, in effecting what he regarded as the rightful powers of the executive and senate within their peculiar departments. *Jefferson's Works, vol.* 4, *p.* 75, 317, 372.

Whether these views be correct or erroneous, they sufficiently evince that the judgment of the court would have been rendered utterly nugatory by the power of the executive, and exhibit in a striking point of view the danger of even a seeming encroachment on the rights of a co-ordinate department of government.   In view of the importance of maintaining the harmonious operation of the different departments of government, the court, in the exercise of its powers, should tread upon no doubtful ground.

This view of the constitutional power of the court is confirmed by the fact, that in the whole history of our government (state or federal) there has been, so far as we are aware, no instance of the exercise of the power now invoked.   In the only court in which the exercise of the power has been asked, its existence was denied. *Hawkins* v. *The Governor*, 1 *Ark. R.* 570.

The case of *Marberry* v. *Madison* (1 *Cranch* 137) is the only authority relied upon in support of the application. Giving to that case all the effect of a judicial decision upon the point under consideration, (which cannot legitimately be claimed for it), and all the weight to which the eminent character of the tribunal itself, and the cogent reasoning by which its conclusions are sustained, entitle it, it does not decide the point now in question.   Some of the positions of the court would seem to warrant the conclusion that a *mandamus* might issue against the president. But no such proposition is announced or attempted to be maintained, and the language of the court, as applied to the case then under consideration, warrants no such inference as is attempted to be drawn from it.   The application in that

case was for a *mandamus*, to compel the secretary of state of the United States to deliver to the applicant a commission, to which the seal had been affixed, which had been signed by the president, and over which it was, therefore, held by the court that the president had ceased to have any control. The counsel of the applicant, in his argument in support of the application, emphatically disclaimed the pretence that a *mandamus* could in any case go to the president. He said, it certainly cannot, in all cases, go to the secretary of state, nor to the president in any case. An idea has gone forth that a *mandamus* to a secretary of state is equivalent to a *mandamus* to the president of the United States. I declare it to be my opinion, grounded on a comprehensive view of the subject, that the president is not amenable to any court of judicature for the exercise of his high functions, but is responsible only in the mode pointed out in the constitution. The secretary of state acts in two capacities; as the agent of the president, he is not liable to a *mandamus*, but as a recorder of the laws of the United States, as keeper of the great seal, as recorder of deeds of lands, of letters patent, and of commissions, &c., he is a ministerial officer of the people of the United States. This distinction is adopted by the court. "It is," says Chief Justice Marshall, " decidedly the opinion of the court, that when a commission has been signed by the president, the appointment is made; and that the commission is complete when the seal has been affixed to it by the secretary of state. When the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled. It has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised until the appointment has been made; but, having once made the appointment, his power over the office is terminated in all cases where, by law, the officer is not removable by him." Again, he says, "Where the head of a department acts in a case in which executive discretion is to be exercised, any application to the court, to control, in any

respect, his conduct, would be rejected without hesitation. But where he is directed by law to do a certain act affecting the absolute right of individuals, in the performance of which he is not placed under the particular direction of the president, and the performance of which the president cannot lawfully forbid, and therefore is never presumed to have forbidden; as, for example, to record a commission or a patent for land, which has received all the legal solemnities, or to give a copy of such record; in such cases it is not perceived on what ground the courts of the country are further excused from the duty of giving judgment that right be done to an injured individual, than if the same services were to be performed by a person not the head of a department." The distinction is clearly drawn between the president himself, and the head of a department acting in a matter, which, in the opinion of the court, had passed beyond the control of the president, which he had no right to forbid, and which, therefore, it was to be presumed he had not forbidden. The case affords no warrant for the present application.

The order must be denied.

CITED in State v. Common Council of Rahway, 4 Vr. 113; State v. Board of Chosen Freeholders of Camden Co., 6 Vr. 221.