ALFRED E. DRISCOLL, RESPONDENT, v. MEYER L. SAKIN, APPELLANT.

Argued February 7, 1939—Decided April 21, 1939.

For the respondent, *Louis B. LeDuc.*

For the appellant, *Meyer L. Sakin, pro se.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Bodine in the Supreme Court.

RAFFERTY, J. (Dissenting.) This suit was instituted under section 1 of the *Quo Warranto* act by the relator as a citizen and taxpayer of Camden county, to test the legal right of the present appellant to hold the office of one of the Republican members of the Camden County Board of Elections. Defendant interposed a plea admitting and justifying his occupation of the office. To this plea relator filed a demurrer which was sustained by the Supreme Court. Judgment of ouster followed.

The Supreme Court based its finding on *R. S.* 19:6-17, *et seq.* This statute contemplates nomination of a member of the County Board of Elections by the state chairman of each of the two most powerful political parties, the nominee to be commissioned thereupon by the governor. The Republican state chairman did not nominate appellant for the office, but did name one Walton.

The question involved is whether the appellant could legally hold the office, not having the nomination of the state chairman. It does not involve the question of the power of the court to compel the governor to appoint the nominee of the

state chairman nor the doctrine of separation or integration, as the case may be, of governmental power.

I favor reversal of the Supreme Court upon the view that the legislature could not delegate to an entity not governmental, the power of appointment to public office.

The content of governmental power is fixed by article 3, section 1, of the Constitution, as residing exclusively within the three distinct departments of government, "The powers of the government shall be divided into three distinct departments;" and the vesting of the power of appointment to public office in any person not included within either of these three distinct departments, it seems to me, is illegal as being without the scope of this constitutional provision. There is implicit therein the direction that the powers of government shall reside nowhere except in the "three distinct departments."

It seems to me incontrovertible that the legislature did, in this case, repose in the respective state chairmen of the two major political parties the power of appointment to public office. The statute provides that the chairman of the state committee of each political party shall, during the month of February in each year, *nominate* a person for a member of the County Election Board, and that the governor *shall* commission such appointee. *R. S.* 19:6-18. It will be seen from this statutory scheme that the governor is entirely without discretion and is required to commission the nominee of the chairman of the state political party, which in effect can mean nothing else than that the chairman of the state political party appoint a public officer.

In *Rouse* v. *Thompson,* 228 *Ill.* 522; 81 *N. E. Rep.* 1109, the Supreme Court of Illinois considered a state statute providing that "the county central committee of each political party shall designate and establish delegate districts in their respective counties on or before, &c., &c." Citing *People* v. *Bennett,* 29 *Mich.* 451, the court said:

"It is not in the power of a legislature to abdicate its functions or to subject citizens and their interests to the interference of any but lawful public agencies. * * * Such legislative and local authority as can be delegated at all must be delegated to municipal corporations or local boards and

officers. * * * If it can be delegated at all, * * * it must be delegated to some body recognized by the constitution as capable of receiving such authority. * * * It is impossible to sustain a delegation of any sovereign power of government to private citizens or to justify their assumption of it."

The court further said:

"The county boards and board of election commissioners fall clearly within the designation of 'public agencies,' as those words are used in the Bennett case; but the county central committees of political parties, where they exist, as they do in this state, as the representatives of purely voluntary organizations, cannot be said to be "public agencies," as they represent, not the state or any political division or department thereof, but a political party, which may be composed of only an inconsiderable portion of the people. We think, therefore, that sections 2 and 3 of said act are clearly unconstitutional and void in attempting to confer the power to designate and establish delegate districts throughout the state upon the county central committees of the several political parties in the state, on the ground that said county central committees are not public agencies, but private individuals, and that legislative power, under no circumstances, can be delegated to a private individual."

In *Nixon* v. *Condon*, 286 *U. S.* 73; 76 *L. Ed.* 984, it was argued before the United States Supreme Court, "that [political] parties and their representative have become the custodians of official power * * *; and that if heed is to be given to the realities of political life, they are now agencies of the state, the instruments by which government becomes a living thing." Replying thereto the court said, "Whether the effect of Texas legislation has been to work so complete a transformation of the concept of a political party as a voluntary association, we do not now decide. *Nothing in this opinion is to be taken as carrying with it an intimation that the court is ready or unready to follow the petitioner so far.* As to that, decision must be postponed until decision becomes necessary." Further, "that when those [political] agencies are invested with an authority independent of the will of the association in whose name they undertake to speak, they

become to that extent the organs of the state itself, the repositories of official power. *They are then the governmental instruments whereby parties are organized and regulated* to the end that government itself may be established or continued. * * * Whether in given circumstances parties or their committees are agencies of government within the Fourteenth or Fifteenth Amendment is a question which this court will determine for itself."

If the delegation of power in the case at bar is to be sustained, it must, under the Condon decision, be upon the consideration that the power lodged in the chairman of the state executive committee is essential or requisite to the organization and regulation of the political party. It must be apparent, it seems to me, that this cannot be so. A member of a county election board is a public officer and is a member of the executive or administrative branch of the government. Under the legal concept, in his public office, he is a stranger to the political party and his official acts cannot contribute in any measure to the organization and regulation of the political party. The political party is not a member of either of the branches of government. It is a voluntary organization having expressed political purposes. *R. S.* 19:5-4, *et seq.,* does not make, either expressly or by implication, the state committee of the political party a public agency. This statute provides, "the committee shall have power to adopt a constitution and by-laws for its proper government. The chairman * * * shall perform all duties required of him by law and the constitution and by-laws of such committee."

The proximity of the function of the political party in offering candidates for public office and electing public officials must remain in sharp distinction to the function of the administration of government by those who are thereby elected or appointed to the governmental office. The grant of governmental power to a voluntary association, essential to the organization and regulation of the voluntary association, cannot be extended to power that directly interferes with the organization and regulation of government itself. It cannot extend to the power of appointment to public office. The indiscriminate lodgement of governmental power in any

voluntary association cannot avoid the acquisition of benefit by the voluntary association or its membership at the expense of the common good. It is a departure from the accepted principle that government is of, for and by all of the people and not for the few nor for the specialty groups.

Nor does the suggestion that long practice or other existing comparable legislation gives a practical construction to the constitutional objection here urged alter the conclusion here made. Unconstitutionality, in the absence of doubtful language, cannot legalize itself. *State* v. *Wrightson,* 56 *N. J. L.* 126, 181; *Jersey City* v. *North Jersey Street Railway Co.,* 72 *Id.* 383, 392; *Rodgers* v. *Taggart,* 118 *Id.* 542, 547; *affirmed,* 120 *Id.* 243.

In *State* v. *Collison,* 197 *Atl. Rep.* 836, 860, the Supreme Court of Delaware, treating a legislative power conferred upon the governor to arbitrarily remove incumbents from office, said:

"The question presented is of supreme importance to the people of this state. The constitution expresses the will of the people whose instrument it is. It is not for the courts, but for those who made it, to supply its defects, if defects there be. The expressions of Chief Justice Bronson, in *Oakley* v. *Aspinwall,* 3 *N. Y.* 547, have been considered of sufficient importance to be incorporated in the note to 1 *Cooley Const. Lim.* 152, a part of which will be quoted as being entirely apposite to the situation here disclosed. Said the learned chief justice, 'There is always some plausible reason for the latitudinarian constructions which are resorted to for the purpose of acquiring power—some evil to be avoided or some good to be attained by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influence that constitutions are gradually undermined, and finally overthrown. * * * If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary in enlarging the powers of the

government, opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.' "

The appointment actually made by the governor in the instant case is valid. A statutory provision for the appointment of officers, found to be illegal or unconstitutional, will not invalidate the otherwise perfect statute. The provision being separable from the main scope of the law, the appointment of public officers will be upheld on that which remains in the statute and which is valid. *Ross* v. *Freeholders,* 69 *N. J. L.* 143, 146; *State* v. *Corrigan,* 72 *N. J. L.* 64, 65. The statute provides that the governor shall commission members of the county boards of election. No other proper method of appointment being provided for in the statute, the power of appointment, *ipso facto,* is vested in the governor.

The judgment of the Supreme Court should be reversed.

I am authorized to say that Judges Hetfield, Dear and WolfsKeil are in accord with the views herein expressed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, DONGES, PERSKIE, PORTER, WELLS, JJ. 7.

*For reversal*—HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, JJ. 4.