THE STATE OF DELAWARE, upon the relation of Albert W. James, Attorney-General, Relator, v. SIGMUND SCHORR, LEROY F. HAWKE, JOHN F. NEWELL, THOMAS COOCH, LELAND WILDS, LEON H. RYAN, WILLIAM K. PENNINGTON, JAMES E. BROWN, JAMES L. BROWN, JOHN W. FOREMAN and WALTER G. TATNALL, Respondents.

(*January* 31, 1948.)

PEARSON, J., sitting.

*Percy Warren Green* and *Joseph A. L. Errigo* for relator.

*Daniel F. Wolcott* (of the firm of Southerland, Berl and Potter) for Sigmund Schorr, Leroy F. Hawke, John F. Newell, Thomas Cooch and Leland Wilds, respondents.

*Henry A. Wise, Jr.,* (of the firm of Hastings, Stockly, Walz and Wise) for Leon H. Ryan, William K. Pennington, James E. Brown, James L. Brown, John W. Foreman and Walter G. Tatnall, respondents.

Superior Court for New Castle County, No. 192, May Term, 1947.

PEARSON, J.:

This case raises the question whether a statute enacted in 1947, 46 Laws of Del. Chap. 182, pp. 482-484, relating to the Department of Elections for New Castle County is violative of provisions of the State Constitution. Relator asserts that the method of appointment of members of the Department is a fatal infirmity of the act. The challenged provisions read thus, 46 Laws of Del. p. 483:

"There shall be appointed eleven members of the Department of Elections for New Castle County, on the fifteenth day of April, 1947, and every four years thereafter on the fifteenth day of April, five members of which are to be nominated by the State Chairman of one of the two leading political parties; five members of which are to be nominated by the State Chairman of the other of the two leading political parties; and one member of which is to be nominated by the Governor. All of the members so nominated shall be appointed by the Governor as members of the Department of Elections. There shall never be more than six members of any one political party or faith. When any member ceases to hold office in the Department due to death, resignation, or for any other cause whatsoever other than the expiration of a full term, the nominating authority which originally nominated that member shall nominate a successor to fill the vacancy which nominee shall be appointed by the Governor for the residue of the term."

The relator is the Attorney General. The eleven respondents are the persons appointed by the Governor pur-

suant to the statute to serve as members of the Department. Five were nominees of the State Chairman of the Republican party; five were nominees of the State Chairman of the Democratic party; and the remaining one was selected by the Governor.

It is axiomatic that the legislative power of our General Assembly "is as broad and ample in its omnipotence as sovereignty itself, except in so far as it may be curtailed by constitutional restrictions express or necessarily implied". *Collison v. State*, 9 *W. W. Harr.* 460, 468, 2 *A.* 2d 97, 100, 119 *A.L.R.* 1422; *State v. Emerson*, 1 *Terry* 328, 345, 10 *A.* 2d 515; affirmed: 1 *Terry* 496, 14 *A.* 2d 378. Consequently, the act in question must be held valid on constitutional grounds unless it be found to violate some constitutional restriction. We shall proceed to consider whether there are any such restrictions which, as the relator contends, are violated by the act.

First, relator says that the act deprives the Governor of "full power of appointment". By this, relator refers to the provisions which repose the power to select ten of the members in the Chairmen of the two leading political parties. The Delaware Constitution, Article III, Section 9, provides:

"He [the Governor] shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint."

This provision is a grant of power, not a limitation of a power which would otherwise be unlimited; and the power to appoint to an office created by the Legislature is not required to be reposed in the Governor. *State v. Emerson*, 1 *Terry* 233, 8 *A.* 2d 154. Thus, the Governor

is empowered to exercise appointive power only to the extent that he is granted such power specifically by the Constitution or by statute. The Statute here provides that the Governor shall appoint the members of the Department, but as to ten of them, he is limited in his selection to those nominated by the two State Chairmen. The power given him does not include the power to choose these ten members independently. Having expressly excluded the power to select from the meaning of "appoint" as used, it follows that what the Statute authorizes him to do is to perform all other acts involved in the making of an appointment; namely, to grant commissions to the ten nominees. A similar authority is reposed in the Governor by the act creating the office of Vice-Chancellor. 42 Laws of Del. c. 148, p. 308. There, his authority is described by the verb "commission"; but this difference in language is of no moment, since the meaning of the words employed in that and in the present act is patently the same. It would be absurd to hold that in order to effect a particular end, the Legislature must employ one particular verbalism only, even though an expression actually used is the same in meaning. I find no constitutional restriction which prevents the Legislature from prescribing that the members of a department it creates shall be "appointed" by the Governor, although not selected by him.

Secondly, relator charges that the act violates constitutional restrictions in that it provides for the "appointment of officers by irresponsible persons outside the frame of government." By this is apparently meant that such persons do not owe enforceable duties to perform the acts they are empowered to perform, are not subject to the restraints imposed on governmental officers generally, and are not within the classification of "governmental officers". Whether a State Chairman was an "irresponsible person outside the frame of government" before the statute

was enacted may be one question. But, assuming he was, it is another question whether the attempted grant of powers by the statute itself renders any State Chairman, who in any manner accepts the grant, "responsible" and within "the frame of government" in so far as the exercise of the powers is concerned.

It is plain that the selection of members of the Department of Elections is a governmental function. The statute attempts to vest the power to make such selections in the State Chairman of the two leading political parties. Thus, in so far as their function is concerned, when exercising the statutory power, the State Chairmen may be appropriately classified as governmental officers, and hence, not "outside the frame of government". Moreover, the grant to the State Chairmen of the power of selection and the acceptance of the grant by them imposes duties on them with relation to the exercise of that power, *Nixon v. Condon*, 286 *U.S.* 73, 52 *S. Ct.* 484, 76 *L. Ed.* 984, 88 *A.L.R.* 458, and therefore, they are not properly characterized as "irresponsible". In the Nixon case, a Texas statute empowered political parties through their State Executives Committees to "determine who shall be qualified to vote or otherwise participate" in such parties. Vernon's Ann. Civ. St. art. 3107. The Democratic party adopted a qualification for voting at primary elections, which would have been in violation of the Fourteenth Amendment of the Federal Constitution if it had been adopted by the legislature. It was contended that political parties (and their executive committees) are not agencies of the government, but are private associations, and hence, not subject to the restraint imposed by the Fourteenth Amendment. The court held otherwise, as appears from the following quotation from the opinion of Mr. Justice Cardozo [286 U.S. 73, 52 S. Ct. 487]:

"We do not impugn the competence of the Legislature

to designate the agencies whereby the party faith shall be declared and the party discipline enforced. The pith of the matter is simply this, that, when those agencies are invested with an authority independent of the will of the association [political party] in whose name they undertake to speak, they become to that extent the organs of the state itself, the repositories of official power. They are then the governmental instruments whereby parties are organized and regulated to the end that government itself may be established or continued. What they do in that relation, they must do in submission to the mandates of equality and liberty that bind officials everywhere. They are not acting in matters of merely private concern like the directors or agents of business corporations. They are acting in matters of high public interest, matters intimately connected with the capacity of government to exercise its functions unbrokenly and smoothly. * * * The test is not whether the members of the executive committee are the representatives of the state in the strict sense in which an agent is the representative of his principal. The test is whether they are to be classified as representatives of the state to such an extent and in such a sense that the great restraints of the Constitution set limits to their action."

Relator's argument disregards the significant consequences flowing from the statute itself and considers the office of State Chairman without reference to the statute. There is a considerable body of legislation which provides for the organization and regulation of political parties and of primary elections held by them. For example, compare: Rev. Code of Del. 1935, §§ 1810, 1769, 1770, 1776, 1778-1784, 1786-1792, 1794-1796, 1800 and 1803, all as amended. However, neither the Constitution nor any statute directs the establishment of the office of State Chairman of a political party, or the terms or conditions concerning the holding of the office. These are fixed by the rules of the political

parties. The offices of State Chairmen were thus not originally established by any provisions of the Constitution or of a statute.

In the Constitution, there is no express restriction upon the legislature which prohibits the reposing of a power to select governmental officers in agencies which were not originally established by the Constitution or by statute. Relator would have us imply such a restriction from the theory of the division of governmental powers into the classifications of executive, legislative and judicial; from the "philosophy of the Constitution of this State"; and from a theory of the republican form of government, under Article IV, Section 4 of the Federal Constitution. In these arguments, relator seems to beg the question by assuming, at the outset, that the division of governmental powers, the philosophy of our Constitution, and the republican form of government exclude, by definition, the selection of governmental officers by agencies not originally established by Constitution or by statute.

A New Jersey statute, *N.J.S.A.* 19:6-17 et seq., markedly similar to the act involved here was assailed on similar grounds, and its constitutionality was sustained in the case of *Driscoll v. Sakin*, 121 *N.J.L.* 225, 1 *A.* 2d 881; affirmed on the opinion below, 122 *N.J.L.* 414, 5 *A.* 2d 699 (with dissents 122 *N.J.L.* 414, 5 *A.* 2d 866). In the principal opinion, the court said (1 A. 2d at page 882):

"The act creating the office [of County Board of Election] provides for the nomination by the state chairman of the two most powerful political parties of two of the members of the board. To insure a democratic form of government, it is necessary that there be at least two strong political parties holding different views upon political questions. Only as a result of public discussion can a wise policy be adopted. To insure honest elections it is essential

that the county board be made up at least by the choice of both powerful political parties. The executive committees of political parties in this country act in matters of high public interest, and so great is their power that they are subject to constitutional restraint and hence may not act as local organizations may. *Nixon v. Condon,* 286 *U.S.* 73, 52 *S. Ct.* 484, 76 *L. Ed.* 984, 88 *A.L.R.* 458. * * *

"It * * * seems settled that where the Constitution of this State is silent the legislature may determine the manner in which a public official may be named, and may delegate the selection to others and that the Executive may be clothed with no discretion in the issuance of the commission. Nor do we see any encroachment upon the authority of the executive. The executive never had a constitutional power to appoint members of County Boards of Election. The County Boards were created by the legislature which provided in plain words the manner of their selection."

The reposal of a power of selection in agencies not originally established by the Constitution or by statute, by requiring appointments to be made from names submitted by the agencies, is recognized as valid in *Bradley v. Board of Zoning Adjustment,* 255 *Mass.* 160, 150 *N.E.* 892; *Commonwealth v. Gibson,* 316 *Pa.* 429, 175 *A.* 389; *Crews v. Cohen,* 164 *Misc.* 476, 299 *N.Y.S.* 51. See also 29 *C.J.S., Elections,* § 60; 42 *Am. Jur.* 953, 954. Statutory provisions of like design are not novel in Delaware. In an act relating to the Registration of Voters, 43 Laws of Del. Chap. 121, pp. 369, 373, 374, it is provided:

"* * * that the total number of registration officers in each representative district shall be divided as equally as possible between the two leading political parties, as the same shall be determined upon by the said respective Boards of Registration at the time of making the appoint-

ments. And further, for each appointment accredited to any political party under this Section, the Executive Committee of such political party in the particular Registration Department District shall furnish the Board of Registration of said Registration Department District, on or before the first day of June of the year in which said appointment is to be made, a list of three names of properly qualified persons, from which list the said Board of Registration shall make its appointments."

In *State v. Lewis*, 5 *Boyce* 213, 91 *A.* 993, this Court held invalid certain appointments of registration officers because they were not made from lists of qualified persons submitted to the Department of Elections for the City of Wilmington by the City Executive Committee of a political party, under an earlier statute of similar import.

The Boards of Medical Examiners for Delaware are created by statute, and the Governor is directed to appoint its members from lists of members submitted by the Medical Societies, Rev. Code, § 918. Members of The State Board of Pharmacy, a statutory board, are appointed, one each year, from a list of five names submitted to the Governor by The Delaware Pharmaceutical Society, Rev. Code, § 936. Similar methods are provided in the case of The State Board of Examiners of Graduate Nurses, Rev. Code § 957, as amended in 44 Laws of Del. c. 73, p. 299; and in the case of The State Board of Dental Examiners, Rev. Code, § 967. The societies referred to were not originally established by the Constitution or by statute; and yet, they are empowered to limit the Governor's appointments to persons named in the lists they submit.

It should also be observed that candidates for elective offices in general elections must be persons certified as such "by the Presiding Officer and Secretary of the several State Party Conventions or Committees". 44 Laws of Del.

Chap. 119, p. 401. In case of the death, removal or resignation of such a candidate after the printing of ballots before an election, the "Chairman of the State, County, Hundred or District Political Organization by which such candidate was nominated" is authorized "to fill such vacancy". Rev. Code, § 1815. Thus, important powers concerning the choice of the very persons who may run for elective offices are reposed in officers of political parties whose offices were not established by any constitutional or statutory prescription.

Relator relies heavily on *Rice v. Foster*, 4 *Har.* 479. There, the Court held that in the absence of specific constitutional authorization, the General Assembly could not properly divest itself of its primary function of legislating, and confer that power upon the people as a whole to be exercised by means of a referendum. Here, the General Assembly has attempted to exercise its legislative power by adopting the act before us; and the power it purports to confer upon the County Chairman is certainly not a power to legislate. Because the facts and legal principles decided in the Foster case are so different from those involved here, that case is of no significant pertinency.

Courts of some states have stricken down statutes somewhat similar to the present. Compare: *Harrell v. Sullivan*, 220 *Ind.* 108, 40 *N.E.* 2d 115, 41 *N.E.* 2d 354, 14 *A.L.R.* 455; *State v. Washburn*, 167 *Mo.* 680, 67 *S.W.* 592, 90 *Am. St. Rep.* 430. To the extent that these authorities may not be distinguishable in principle, I decline to follow them for the reasons stated above. My conclusion is that the Delaware Constitution furnishes no warrant for implying a restriction upon the broad legislative authority of our General Assembly from reposing the power to select governmental officers in agencies not originally established by the Constitution or by statute.

■ ■ · Thirdly, relator contends that the act establishes a political test for the offices of Members of the Department of Elections and thereby violates Article XIV of the Delaware Constitution and the "equal protection" clause of the Fourteenth Amendment of the Federal Constitution. Article XIV of the Delaware Constitution prescribes the form of oath for State officers (which does not mention political party affiliations) and concludes as follows:

"No other oath, declaration or test shall be required as a qualification for any office of public trust."

The act does not require the Chairmen of the political parties to select members of any particular party, nor does it forbid the selection of persons having no party affiliations. It provides that "there shall never be more than six members of any one political party or faith." This manifestly does not establish a political test for office. It is similar to a provision of Article IV, Section 3 of the State Constitution which relates to the appointment of the Chancellor and the five law judges and provides:

"The said appointment shall be such that no more than three of the said five law judges, in office at the same time, shall have been appointed from the same political party."

Since the Constitution itself employs this kind of restriction and nowhere expressly prohibits its use in other connections, it cannot reasonably be said that the oath of office provision prohibits it.

Relator says that the act has the effect of establishing a political test for office because it is likely that a Chairman of a political party will select only members of his own party. It might just as well be urged that any act granting the Governor an unrestricted appointive power establishes a political test because of the likelihood that any Governor

would appoint members of the political party which sponsored his election. There is no merit in relator's argument with respect to the indicated sections of the Federal and State Constitutions. Compare: *State v. Lewis,* 5 *Boyce* 213, 91 *A.* 993.

■■ Lastly, relator contends that the title of the Act does not comply with the requirements of Article II, Section 16 of the Delaware Constitution "in that this Act, while a bill in the General Assembly, did not express the subject thereof in its title." The title reads thus:

"An Act to Amend Chapter 57 of the Revised Code of the State of Delaware, 1935, as Amended, Entitled, 'Department of Elections for New Castle County'."

Relator's principal argument is that the subject of the act is not properly expressed in its title by merely referring to the chapter of the Code which it amends, but that the title should recite the general subject of the amendment. This question, in principle, has already been decided adversely to relator in *Kennedy v. Truss,* 1 *Terry* 424, 13 *A.* 2d 431. In addition, the title of the present act, by referring to the Department of Elections for New Castle County, does indicate the general subject of the amendment. Relator's argument forgets that there is not just one form of words, and one only, which can comply with the requirement that the title express the subject of an act. On the contrary, any form of words will do, so long as the body of the act is germane to the title. That it is so in this case requires no exposition of reasons.

■ Under this point, relator also objects that the present act describes the heading of Chapter 57 of the Code as "Department of Elections for New Castle County"; whereas, in the Code itself, the heading is "Department of Elections for the City of Wilmington". The answer to

this is that the act refers to Chapter 57 of the Code "As Amended". Let us examine some of the titles of acts which amended Chapter 57 prior to the present act.

In 1939, an act was adopted which abolished the Department of Elections for the City of Wilmington and established a Department of Elections for New Castle County. 42 Laws of Del. Chap. 115, p. 223. The title of that act is as follows:

"An Act to Amend Chapter 57 of the Revised Code of the State of Delaware, 1935, Entitled 'Department of Elections for the City of Wilmington' by Providing for the Establishment of a Department of Elections for New Castle County."

In 1943, various sections of Chapter 57 of the Code, as amended, were further amended. 44 Laws of Del. Chap. 112, p. 374. The amendatory act is entitled:

"An Act to Amend Chapter 57, Revised Code of Delaware, 1935, Relating to Department of Elections for New Castle County."

In 1945, there were again amendments of sections of Chapter 57 of the Code, as amended. 45 Laws of Del. Chap. 147, p. 501. The title of this amendatory act reads as follows:

"An Act to Amend Chapter 57 of the Revised Code of the State of Delaware, 1935, as Amended, Entitled, 'Department of Elections for New Castle County'."

Thus, when the act before the Court was adopted, the statutes comprising Chapter 57 of the Code, as amended, related to a Department of Elections for New Castle County, and there was in existence no Department of Elections for the City of Wilmington; and Chapter 57 had been previously described in earlier acts of the Legislature as "Relating

to", and as "Entitled", "Department of Elections for New Castle County". Since the present act referred to the Code chapter "as amended", it would seem reasonable and proper for the Legislature to describe the chapter as "Entitled, 'Department of Elections for New Castle County'."

Referring to the constitutional provision that the subject of a bill "shall be expressed in its title", Const. art. 2, § 16, our Supreme Court said in *Wilmington Trust Co. v. Highfield*, 4 *W. W. Harr.* 394, 400, 153 *A.* 864, 867:

"The disposition of the courts is towards a liberality of construction of constitutional provisions of the kind we are here concerned with. *Cooley, Constitutional Limitations* (*7th Ed.*) 209. As was observed in *Monaghan v. Lewis* [5 *Penn.* 218, 59 *A.* 948, 10 *Ann. Cas.* 1048], *supra*, such provisions 'should not be so construed as to defeat or embarrass legislation where there has been a substantial compliance with its requirements. Where it is possible, it should be so construed as to uphold, rather than destroy, legislation.' This is but a particular application to the constitutional provision in question of the general principle which courts everywhere apply, viz., that every presumption is in favor of the constitutionality of legislative enactments and that they should not be declared invalid unless their invalidity is beyond doubt."

This general principle is applicable here to the question of title, and as well, with respect to all other attacks which relator directs against the act. With or without resort to the presumption in favor of constitutionality, I find no constitutional restriction violated by the act and, therefore, must hold the act valid.

An order will be entered dismissing the petition and quashing the rule.