NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0050-22

IN THE MATTER OF THE
APPOINTMENT OF THE
COUNCIL ON AFFORDABLE
HOUSING BY GOVERNOR
PHILIP MURPHY.

_____

**APPROVED FOR PUBLICATION**

**January 23, 2024**

**APPELLATE DIVISION**

Argued December 12, 2023 – Decided January 23, 2024

Before Judges Sumners, Rose and Smith.

On appeal from the inaction of the Council on Affordable Housing.

Jeffrey R. Surenian argued the cause for appellants Borough of Beach Haven (Ocean County), Township of Bordentown (Burlington County), Township of Chatham (Morris County), Township of Cranford (Union County), Township of East Hanover (Morris County), Township of Egg Harbor (Atlantic County), Township of Fairfield (Essex County), Township of Freehold (Monmouth County), Township of Jackson (Ocean County), Township of Mahwah (Bergen County), Borough of Montvale (Bergen County), Township of Readington (Hunterdon County), Borough of Sayreville (Middlesex County), Township of West Caldwell (Essex County), Borough of Franklin Lakes (Bergen County), Township of Hillsborough (Somerset County), and Township of Warren (Somerset County) (Surenian, Edwards, Buzak & Nolan, LLC, attorneys; Jeffrey R. Surenian and Michael J. Edwards, of counsel and on the briefs; William Edward Olson, on the briefs).

Michael L. Zuckerman, Deputy Solicitor General, argued the cause for respondent Philip Murphy, in his official capacity as Governor of New Jersey (Matthew J. Platkin, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, Michael L. Zuckerman, and Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Susan Marie Scott, Tim Sheehan, and Levi Malcolm Klinger-Christiansen, Deputy Attorneys General, on the brief).

Adam M. Gordon argued the cause for amicus curiae Fair Share Housing Center (Adam M. Gordon, of counsel and on the brief; Zoey Chenitz, on the brief).

Frank Glenn Marshall, Jr., Associate General Counsel, argued the cause for amicus curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (William J. Kearns, Jr., General Counsel, attorney; Frank Glenn Marshall, Jr., on the brief).

Thomas F. Collins, Jr., argued the cause for amicus curiae Township of South Brunswick and Township of South Brunswick Planning Board (Vogel, Chait, Collins & Schneider, attorneys; Thomas F. Collins, Jr., and Thomas James Molica, on the brief).

Jonathan Edward Drill argued the cause for amicus curiae Borough of Chatham (Morris County), Township of Clinton (Hunterdon County), Township of Greenwich (Warren County), Borough of Lebanon (Hunterdon County), Borough of Saddle River (Bergen County), and Town of Westfield (Union County) (Stickel, Koenig, Sullivan & Drill, LLC, attorneys; Jonathan Edward Drill, on the brief).

The opinion of the court was delivered by

A-0050-22

ROSE, J.A.D.

This appeal requires us to consider whether the Governor can be compelled by mandamus to act on an appointment power when the statute at issue neither expressly requires, nor provides a deadline for, the exercise of that discretionary function. Seventeen municipalities challenge the Governor's inaction, demanding he fill long-standing vacancies on the Council on Affordable Housing (COAH). Contending the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.20, mandates the chief of the executive branch to fill those appointments, appellants argue Governor Murphy's inaction violates that obligation and undermines the public policy reflected in the FHA. Appellants claim this court can and must enforce the Governor's obligation to appoint members to COAH. Appellants also assert the Governor's inaction violates the Chief Executive's constitutional duty to "take care that the laws be faithfully executed." See N.J. Const., art. V, § I, ¶ 11. Finally, appellants claim the Governor effectively and inappropriately abolished COAH in contravention of our Supreme Court's decision in In re Plan for the Abolition of the Council on Affordable Housing, 214 N.J. 444, 471 (2013) (Abolition of COAH).

Governor Murphy counters this court cannot compel the Chief Executive to make appointments because mandamus – the relief appellants seek – cannot

3

be applied against the Governor, generally.  In particular, the Governor argues "New Jersey courts have long held that they lack jurisdiction to issue a writ of mandamus compelling the Chief Executive to act."  Further, even if mandamus were applicable to the Governor, the remedy is unavailable here because appellants seek to compel an exercise of discretion.  Finally, Governor Murphy contends "a Governor's decision regarding when and whether to make appointments is a classic type of nonjusticiable question that courts have consistently avoided" under separation-of-powers principles, specifically, the political question doctrine.

Having considered the parties' arguments in view of long-established legal principles, we hold the Governor cannot be compelled by mandamus to fill COAH's vacancies.  Accordingly, we reject appellants' contentions and dismiss the appeal.

## I.

### A.  COAH's History and Framework

We begin by setting forth COAH's history and framework in some detail to give context to the issues raised on appeal.  COAH's origin is rooted in our Supreme Court's landmark decision in Southern Burlington County NAACP v. Township of Mount Laurel, 67 N.J. 151, 174 (1975) (Mount Laurel I), which

A-0050-22

held developing municipalities are under a constitutional obligation to provide a realistic opportunity for the creation of affordable housing. Eight years later, the Court clarified and reaffirmed that constitutional requirement in Southern Burlington County NAACP v. Township of Mount Laurel, 92 N.J. 158, 351-52 (1983) (Mount Laurel II).

Finding "widespread non-compliance with" Mount Laurel I, id. at 199, and acknowledging the Legislature had thus far failed to act to protect "the interests involved," id. at 212, the Court in Mount Laurel II created a judicial remedy to enforce the constitutional zoning obligations of municipalities. Id. at 289-91. Specifically, the Court fashioned a special litigation track for exclusionary zoning cases and expanded "builder's remedies" enabling them to sue for the opportunity to construct housing at higher densities than a municipality would permit. Id. at 279-81, 287-93. The Court, however, expressed its long-standing preference for legislative rather than "judicial action in this field." Id. at 212.

Two years later, in 1985, the Legislature responded to Mount Laurel II by "enact[ing] the FHA, which created COAH and vested primary responsibility for assigning and determining municipal affordable housing obligations in that body." In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 7 (2015) (Mount

5

Laurel IV) (citing N.J.S.A. 52:27D-305, -307).  In the "Findings" section of the FHA, the Legislature expressly recognized the Court's statements in Mount Laurel II that addressing the Mount Laurel obligation was "'better left to the Legislature' . . . and that the judicial role in upholding the Mount Laurel doctrine 'could decrease as a result of legislative and executive action.'"  N.J.S.A. 52:27D-302(b).

Pursuant to the FHA, COAH was "established in, but not of, the Department of Community Affairs [(DCA)] and [COAH] . . . to consist of 12 members appointed by the Governor with the advice and consent of the Senate." N.J.S.A. 52:27D-305(a).  Membership must be balanced to represent various constituencies, with no political party enjoying a majority presence.  Ibid.  The FHA also required the Governor nominate members within thirty days of the act's effective date.  N.J.S.A. 52:27D-305(d).  Generally, members serve six-year terms "until their respective successors are appointed and shall have qualified," with terms staggered via varying term lengths designated for the initial batch of appointees.  N.J.S.A. 52:27D-305(b).  Of particular relevance to this appeal:  "Vacancies shall be filled in the same manner as the original appointments, but for the remainders of the unexpired terms only."  Ibid.

By structuring COAH in this manner, the Legislature intended the Council "to be independent." Abolition of COAH, 214 N.J. at 471. "Although the Governor has the power to appoint the Council's members," our Supreme Court has explained "the membership requirements in the statute ensure that a cross-section of community and State interests serve on the Council, with individual members representing different voices: local government, households in need of low- and moderate-income housing, nonprofit builders of affordable housing, the disabled, for-profit builders, and the public interest." Ibid. Moreover, "[m]embers serve staggered six-year terms that do not coincide with gubernatorial terms." Ibid. (citing N.J.S.A. 57:27D-305(b)).

The FHA required COAH "to enact regulations that establish, and thereafter update, statewide affordable housing need; to assign to each municipality an affordable housing obligation for its designated region; and to identify the delivery techniques available to municipalities in addressing the assigned obligation." Mount Laurel IV, 221 N.J. at 7 (citing N.J.S.A. 52:27D-307, -308). "The FHA also transferred pending Mount Laurel litigation to COAH for resolution through an administrative process." Id. at 8. Under the act, municipalities are permitted to voluntarily submit their fair share housing plans to COAH for review. N.J.S.A. 52:27D-309(a).

7

Shortly after the FHA's enactment, the Supreme Court commended the "unprecedented willingness by the Governor and the Legislature to face the Mount Laurel issue" in response to the Court's "unprecedented decisions." Hills Dev. Co. v. Bernards, 103 N.J. 1, 23 (1986) (Mount Laurel III). Reiterating its view "that the vindication of the Mount Laurel constitutional obligation is best left to the Legislature," the Court noted the enactment of the FHA constituted the "[l]egislative action," which it had requested in Mount Laurel II. Id. at 46-47.

"COAH adopted rules to govern its first and second housing cycles, but when the Second Round rules expired in 1999, COAH had not proposed new regulations for the third housing cycle." In re Declaratory Judgment Actions Filed by Various Muns., Cnty. of Ocean, 227 N.J. 508, 514 (2017) (Mount Laurel V). COAH finally adopted Third Round rules in late 2004, a "dramatic and inexplicable" delay that "frustrated" "[t]he public policies underlying the FHA and the Mount Laurel cases." In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J. Super. 61, 95-96 (App. Div. 2004). However, "reviewing courts found several key aspects of the regulations to be invalid and violative of the Mount Laurel doctrine," Mount Laurel V, 227 N.J. at 514-15, and partially invalidated the regulations first in 2007 and again in 2010 after COAH adopted

revised Third Round rules in 2008.  Ibid.; In re Adoption of N.J.A.C. 5:94 & 5:95, 390 N.J. Super. 1, 86-87 (App. Div.), certif. denied, 192 N.J. 71 (2007); In re Adoption of N.J.A.C. 5:96 & 5:97, 416 N.J. Super. 462, 477, 511-12 (App. Div. 2010), aff'd as modified, 215 N.J. 578 (2013).

In 2010, the Senate passed a bill that would have "abolish[ed] COAH and transfer[red] many of its responsibilities to the [DCA]."  In re Adoption of N.J.A.C. 5:96 & 5:97, 416 N.J. Super. at 477.  After approving various amendments, the Legislature passed a revised version of the bill.  See Abolition of COAH, 214 N.J. at 452.  Then-Governor Chris Christie conditionally vetoed the bill, outlining specific objections and requesting amendment to a version previously passed by the Senate.  Ibid.  Shortly thereafter, the bill was withdrawn from consideration in the Legislature, and legislative attempts to reform affordable housing policy and abolish COAH effectively ended.  Id. at 452-53.

The following year, Governor Christie issued Reorganization Plan No. 001-2011 which would have abolished COAH and "transferred COAH's powers, functions, and duties to DCA and replaced the twelve-member Council with the DCA Commissioner."  Id. at 453.  "The Governor relied on the [Executive Reorganization Act of 1969, N.J.S.A. 52:14C-1 to -11 (Reorganization Act)] to

authorize this action." Ibid. This court thereafter invalidated the plan following The Fair Share Housing Center's (FSHC) ensuing appeal. Id. at 453-54 (citing In re Plan for Abolition of Council on Affordable Hous., 424 N.J. Super. 410 (App. Div. 2012)).

On certification, our Supreme Court affirmed our decision holding the Reorganization Act only authorizes the Governor to reorganize entities that are "of the executive branch." Id. at 454, (quoting N.J.S.A. 52:14C-3(a)). COAH, an independent agency as denoted by its establishment "in, but not of," the DCA, was "not 'of' the Executive Branch," and therefore "not subject to the [Reorganization] Act." Id. at 468 (quoting N.J.S.A. 52:27D-305(a)). Notably, COAH's status and whether the Council fell within the scope of the Reorganization Act was the only issue before the Court. Id. at 448-49.

The Court in Abolition of COAH found further support for COAH's independent design in its structure which included the membership requirements. Id. at 471. "The law, thus, does not give the Chief Executive plenary power over the operation of the Council. The current statute reflects careful judgments about who should make decisions on affordable housing policy and how those decisions are to be reached." Ibid. However, the Court's decision only concerned the applicability of the Reorganization Act: "The plain

10

language of the Reorganization Act does not authorize the Chief Executive to abolish an independent agency like COAH. If the Governor and the Legislature wish to abolish COAH, they must take another path." Id. at 479.

No other path was taken. COAH ultimately failed to adopt Third Round rules. In 2015, the Supreme Court "responded to years of delay and uncertainty with Mount Laurel IV, reaffirming the constitutional obligation to create a realistic opportunity for the provision of affordable housing" and "declar[ing] COAH defunct." Mount Laurel V, 227 N.J. at 515 (citing Mount Laurel IV, 221 N.J. at 3-4). The Court eliminated the FHA's exhaustion-of-administrative-remedies requirement, explaining the requirement "[wa]s premised on the existence of a functioning agency, not a moribund one." Mount Laurel IV, 221 N.J. at 5.

The Court in Mount Laurel IV thus recognized affordable housing disputes could proceed in a judicial forum. Id. at 5. However, the Court did not foreclose "either COAH or the Legislature from taking steps to restore a viable administrative remedy that towns can use in satisfaction of their constitutional obligation." Id. at 34. The Court therefore was "hope[ful] that an administrative remedy w[ould] again become an option for those proactive municipalities that

11

wish to use such means to obtain a determination of their housing obligations."

Ibid.

In Mount Laurel V, 227 N.J. at 531, the Court reiterated that COAH could be "resurrect[ed] and operate constitutionally" in the future. It also recognized the possibility of "alternative methods," and "welcome[d] legislative attention to this important social and economic constitutional matter." Ibid. In the meantime, however, judicial oversight of municipal affordable housing obligations continues.

## B. The Present Appeal

Contending "the COAH Board ceases to exist" as a direct consequence of the Governor's failure to fill its vacancies "for at least six years," on June 10, 2022, ten municipalities[1] sent a letter to Governor Murphy, demanding he "fulfill [his] duty under the FHA to appoint members to the COAH Board so that the FHA operates as the Legislature designed it." Citing the Court's decision in Abolition of COAH, the municipalities asserted the Governor's inaction

---

[1] Township of Bordentown (Burlington County), Township of Chatham (Morris County), Township of Cranford (Union County), Township of East Hanover (Morris County), Township of Egg Harbor (Atlantic County), Township of Freehold (Monmouth County), Township of Mahwah (Bergen County), Borough of Montvale (Bergen County), Township of Readington (Hunterdon County), and Borough of Sayreville (Middlesex County).

effectively abolished COAH. The municipalities further claimed they would "seek relief from the [c]ourts" if the Governor failed to make the appointments within thirty days. In a second letter dated June 17, 2022, the municipalities reiterated their demands and clarified that they sought both a "commitment to appoint members . . . within 30 days of receipt of the letter on June 15, 2022," and actual appointments by August 15, 2022.

The Governor took no action. Accordingly, the municipalities appealed from a purported "decision entered on 06/15/2022."[2] After the appeal was filed, we granted the motions of four groups to appear as amici curiae: (1) FSHC; (2) a municipal group, comprised of six municipalities;[3] (3) the Township of South Brunswick and its planning board; and (4) the New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys.

---

[2] Seven additional municipalities thereafter joined this appeal: Borough of Beach Haven (Ocean County), Township of Fairfield (Essex County), Township of Jackson (Ocean County), Township of West Caldwell (Essex County), Township of Hillsborough (Somerset County), Township of Warren (Somerset County), and Borough of Franklin Lakes (Bergen County).

[3] Borough of Chatham (Morris County), Township of Clinton (Hunterdon County), Township of Greenwich (Warren County), Borough of Lebanon (Hunterdon County), Borough of Saddle River (Bergen County), and Town of Westfield (Union County).

FSHC urges us to deny appellants' application; the remaining groups support the appeal.

## II.

### A. Appellate Jurisdiction

At issue in this appeal is the Governor's "inaction" for failing to fill COAH's vacancies. As a preliminary matter, we agree with appellants that this court has jurisdiction "to review the Governor's actions and inactions" pursuant to Rule 2:2-3(a)(2). Although the Governor contends New Jersey courts "lack jurisdiction to issue a writ of mandamus compelling the Chief Executive to act," he does not dispute that the present matter was properly filed in this court.

Rule 2:2-3(a)(2) provides, in pertinent part, "appeals may be taken to the Appellate Division as of right . . . (2) to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer." As we have held, this court has jurisdiction over agency action and inaction. Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 101 (App. Div. 2014) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 2:2-3(a)(2) (2014)); see also Twp. of Neptune v. N.J. Dep't of Env't. Prot., 425 N.J. Super. 422, 432 (App.

Div. 2012). We also have assumed jurisdiction of appeals from actions of the Governor. Vas v. Roberts, 418 N.J. Super. 509, 519 (App. Div. 2011).

B. Interpretation of the Statute Establishing COAH, N.J.S.A. 52:27D-305

We next address appellants' contention that the Governor's initial appointment of COAH members under N.J.S.A. 52:27D-305 applies with full force and effect to the Governor's "obligation" to fill the Council's vacancies. Because this argument presents a question of statutory interpretation, we must, of course, "effectuate the intent of the Legislature, as evidenced by the plain language of the statute, its legislative history and underlying policy, and concepts of reasonableness." State v. Courtney, 243 N.J. 77, 85 (2020). A "statute's plain language 'is the "best indicator" of legislative intent.'" Ibid. (quoting State v. Rodriguez, 238 N.J. 105, 113 (2019)).

The Legislature's words and phrases must be construed within the context of "related provisions so as to give sense to the legislation as a whole" and given their "generally accepted meaning," unless that meaning is "inconsistent with the manifest intent of the Legislature." Ibid. (first quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018); and then quoting N.J.S.A. 1:1-1). "If the plain language leads to a clear and unambiguous result, then our

interpretative process is over."  Courtney, 243 N.J. at 86 (quoting Johnson v.

Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

Paragraph (a) of N.J.S.A. 52:27D-305 plainly established COAH and the

Governor's role in the nomination process:  "There is established in, but not of,

the [DCA] a Council on Affordable Housing to consist of 12 members appointed

by the Governor with the advice and consent of the Senate."  The same paragraph

prescribes, at length, the Legislature's mandate that COAH's members be

diverse:

> [F]our [members] shall be elected officials representing the interests of local government, at least one of whom shall be representative of an urban municipality having a population in excess of 40,000 persons and a population density in excess of 3,000 persons per square mile, at least one of whom shall be representative of a municipality having a population of 40,000 persons or less and a population density of 3,000 persons per square mile or less, and no more than one of whom may be a representative of the interests of county government; four shall represent the interests of households in need of low and moderate housing, one of whom shall represent the interests of the nonprofit builders of low and moderate income housing, and shall have an expertise in land use practices and housing issues, one of whom shall be the Commissioner of Community Affairs, ex officio, or his or her designee, who shall serve as chairperson, one of whom shall be the executive director of the agency, serving ex officio; and one of whom shall represent the interests of disabled persons and have expertise in construction accessible to disabled persons; one shall represent the

16

interests of the for-profit builders of market rate homes, and shall have an expertise in land use practices and housing issues; and three shall represent the public interest. Not more than six of the 12 shall be members of the same political party. The membership shall be balanced to the greatest extent practicable among the various housing regions of the State.

[N.J.S.A. 52:27D-305(a).]

Pursuant to the plain terms of N.J.S.A. 52:27D-305(d), the Governor was required to nominate the initial COAH members within a specific time frame: "The Governor shall nominate the members within 30 days of the effective date of this act." See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) (stating "the word 'shall' generally is mandatory"). No such temporal mandate applies to the filling of vacancies.

Instead, paragraph (b) of the statute provides, in pertinent part: "Vacancies shall be filled in the same manner as the original appointments, but for the remainders of the unexpired terms only." N.J.S.A. 52:27D-305(b). Appellants claim the "same manner as the original appointments" language requires the Governor fill COAH vacancies – and seemingly suggest in their June 2022 demand letters – that the vacancies must be filled within thirty days of those openings. We disagree.

In Meredith v. Mercer County Board of Chosen Freeholders, the trial court concluded a substantially similar phrase, "[a]ny vacancy . . . shall be filled in the same manner as the original appointment" in the statute at issue in that case, N.J.S.A. 19:32-26, "refer[red] back to the manner in which an appointment to such a position 'shall be filled by some suitable person who shall be nominated by the Governor with the advice and consent of the Senate.'" 117 N.J. Super. 379, 383, 391 (Law Div. 1970). We "affirmed essentially for the reasons set forth in the [trial court's] opinion," 117 N.J. Super. 368, 368 (App. Div. 1971), and the Court affirmed our judgment "for the reasons expressed in [the] majority opinion . . . in accordance with the trial court opinion," 59 N.J. 530, 530 (1971). Similarly, here, we discern no reason to conclude the "same manner as the original appointments" set forth in the vacancy provision, N.J.S.A. 52:27D-305(b), mandates the Governor make appointments beyond the initial COAH membership.

Needless to say, however, we cannot conclude when the Legislature created COAH it intended the Council would become entirely non-functional because of the lack of appointments. Instead, the Legislature likely envisioned the Governor would make new appointments after the end of each COAH member's term to preserve staggered terms. In that sense, the Governor's

18

inaction is patently inconsistent with the FHA's legislative goal in creating COAH.

Nonetheless, the Legislature's expectation that the Governor would make appointments to COAH is not equivalent to an intention to obligate the Chief Executive to do so. The Legislature may not have thought a mandate was appropriate or necessary. Indeed, Governors generally need not be compelled to make appointments or exercise a political power that permits them to lawfully further their policy goals. But we need not speculate about the Legislature's intentions, nor can we rewrite the legislation. See In re R.K., 475 N.J. Super. 535, 543 (App. Div. 2023) (holding courts neither "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language" (quoting State v. Frye, 217 N.J. 566, 575 (2014))). Absent express language in the statute compelling the Governor to make successor appointments to COAH, we discern no reason to construe the statute otherwise. See, e.g., Courtney, 243 N.J. at 85.

C. Applicability of Mandamus to the Governor's Inaction

Assuming, however, the FHA not only empowers but also obligates the Governor to make appointments to COAH, there remains the main point of dispute between the parties: whether that obligation is judicially enforceable.

19

Well-established principles guide our review. As our Supreme Court has reiterated:

> A writ of mandamus is an order given by a court to a government official "that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result." Switz v. Middletown Township, 23 N.J. 580, 598 (1957). Mandamus is a well-established remedy for "official inaction." Joseph v. Passaic Hosp. Ass'n, 26 N.J. 557, 571 (1958).
>
> [In re Resol. of State Comm'n of Investigation, 108 N.J. 35, 45 n.7 (1987).]

"Thus, mandamus is an appropriate remedy '(1) to compel specific action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but not in a specific manner.'" Vas, 418 N.J. Super. at 522 (quoting Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 299 (App. Div. 1997)). A duty is "ministerial" if it is "absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Ibid. (quoting Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987)).

Commencing in 1856 with State v. Governor, 25 N.J.L. 331, 349-50 (Sup. Ct. 1856), New Jersey courts have repeatedly held mandamus may not issue against the Governor. In that case, a party claiming he had been elected surrogate of Passaic County sought to compel the Governor issue him the commission for the position. Id. at 343. The court rejected his claim on the merits, id. at 344-45, and the "ground that th[e] court ha[d] no power to award a mandamus, either to compel the execution of any duty enjoined on the executive by the constitution, or to direct the manner of its performance," id. at 349.

The court explained "[t]he exercise of such power would be an unwarrantable interference with the action of the executive within his appropriate sphere of duty" because "[t]he issuing of the commission under the constitution of this state is clearly an exercise of political power." Id. at 349-50. "In regard to any other executive duty prescribed by the constitution," the court said, "it has never been pretended that the judiciary has the power to enforce its execution, or to direct the manner of its performance." Id. at 350. The court also clarified that, with respect to the Governor, the distinction between ministerial duties and discretionary functions did not apply, and courts could compel neither. Id. at 351.

21

Decades later in <u>Cole v. Corio</u>, 105 N.J.L. 511, 512 (Sup. Ct. 1929), the Supreme Court considered a challenge to a statute providing that "the [G]overnor [wa]s authorized and empowered to appoint by and with the advice and consent of the [S]enate an additional judge of the Court of Common Pleas." The statute was challenged, in part, on the ground that by allowing the Governor to determine whether an additional judge would be appointed, it unlawfully delegated the Legislature's discretionary power to the Executive. <u>Id.</u> at 513. The Court rejected this argument, reasoning "it is somewhat immaterial whether the statute be permissive or mandatory, as the [G]overnor cannot be compelled by mandamus to appoint if he refuse to do so." <u>Ibid.</u>

Stated another way, even if a statute mandates the Governor make an appointment, that obligation cannot be enforced by the Judiciary. <u>Ibid.</u> Pertinent to this appeal, the Court discerned no "practical" difference between a statute permitting the Governor to make an appointment and one requiring the Governor to do so. <u>Ibid.</u>

Thereafter, the Chancery Division addressed the Governor's appointment powers in a lawsuit initiated by the county bar association against the Governor and Senate, seeking to compel the appointment of judges to remedy the long-standing, "disproportionately large number of judicial vacancies in Passaic

22

County." Passaic Cnty. Bar Ass'n v. Hughes, 108 N.J. Super. 161, 163 (Ch. Div. 1969). Relevant here, the judge found several reasons for denying the relief sought against the Governor, including that a writ of mandamus cannot issue against the Chief Executive. Id. at 174. Citing State v. Governor, the judge was convinced an even "stronger case for the denial of relief" existed in the matter before him than that "leading decision" on mandamus because "an exercise of the appointing power [is] highly discretionary." Id. at 174-75.

Notwithstanding the principles set forth in State v. Governor, as reiterated in Cole and Passaic County Bar Association, appellants argue all three cases are inapposite to their statutory argument because they "involve[d] the Governor's constitutional obligations." We are not persuaded.

For example, appellants' reliance on the court's decision in Driscoll v. Sakin (Driscoll I), 121 N.J.L. 225 (Sup. Ct. 1938), aff'd 122 N.J.L. 414 (E. & A. 1939), is misplaced. In Driscoll I, the court ordered the defendant ousted from the county board of election because he was appointed by the Governor without the statutorily required nomination of his party's state chairman. Id. at 227-29. The court acknowledged it could not "compel the execution of any duty imposed by the constitution," but noted the defendant was not "appointed pursuant to the constitution." Id. at 227. The court elaborated:

It, therefore, seems settled that where the constitution of this state is silent the [L]egislature may determine the manner in which a public official may be named, and may delegate the selection to others and that the executive may be clothed with no discretion in the issuance of the commission. Nor do we see any encroachment upon the authority of the executive. The executive never had a constitutional power to appoint members of county boards of election. The county boards were created by the [L]egislature which provided in plain words the manner of their selection. This court, in declaring the defendant to have been commissioned not in accordance with the mandates of the [L]egislature, is not in any sense supervising or interfering with the transaction.

[Id. at 228-29.]

Appellants construe Driscoll I as demonstrating "a dispositive distinction between executive appointments prescribed in the Constitution and appointments that only arise from a delegation of Legislative authority." And in specifying that it could not compel the execution of "constitutional" duties, and noting the statutory basis for the county board appointments, the court in Driscoll I seems to suggest some such distinction, if not a dispositive one.

Driscoll I, however, did not involve mandamus at all. "It d[id] not involve the question of the power of the court to compel the [G]overnor to appoint the nominee of the state chairman nor the doctrine of separation or integration, as the case may be, of governmental power." Driscoll v. Sakin (Driscoll II), 122

24

N.J.L. 414, 414-15 (E. & A. 1939) (Rafferty, J., dissenting).  It did not involve the exercise of discretionary gubernatorial appointment power, whether based on the constitution or statute, as the Governor had "no discretion in the issuance of the commission" at issue.  Driscoll I, 121 N.J.L. at 228.  As the court made clear, it was "not in any sense supervising or interfering with the transaction" of appointing a county board member.  Id. at 229.  The court simply reviewed governmental action and found it unlawful.  Ibid.

Nor are we persuaded by appellants' contention that the appointment power is "not inherently executive."  Although the power to make appointments does not belong exclusively to the Chief Executive, "[g]enerally speaking, the power to appoint personnel within the executive branch of government is an executive function."  Murphy v. Luongo, 338 N.J. Super. 260, 267 (App. Div. 2001).  "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement.  The latter are executive functions."  Enourato v. N.J. Bldg. Auth., 90 N.J. 396, 416 (1982) (quoting Springer v. Philippine Islands, 277 U.S. 189, 202 (1928)).  Under our state constitution, the Governor is responsible for "nominat[ing] and appoint[ing], with the advice and consent of the Senate, all officers for whose election or appointment provision

is not otherwise made by this Constitution or by law." N.J. Const., art. V, § 1, ¶ 12. By contrast, our constitution expressly prohibits the Legislature from "appoint[ing] any executive, administrative or judicial officer except the State Auditor." N.J. Const., art. IV, § 5, ¶ 5.

To be sure, "among the most important fields of discussion" at the 1947 New Jersey Constitutional Convention were "the needs for strengthening the Executive and . . . curbing [the Legislature's] appointments." Richman v. Ligham, 22 N.J. 40, 49 (1956). In explaining its then-proposed ban on legislative appointments, the "Commission on Revision of the New Jersey Constitution" stated that "the power of appointment to public office" is "an essentially executive power." Id. at 48.

Finally, we are not convinced that the basic principles of mandamus permit the relief sought by appellants. As we have stated, mandamus is an appropriate remedy to compel ministerial action or "to compel the exercise of discretion, but not in a specific manner." Vas, 418 N.J. Super. at 522. Although the parties agree that the Governor's appointment of COAH members is a discretionary function – in that the choice of appointees is discretionary – the parties disagree whether the timing of appointments is a matter of discretion.

A-0050-22

As the Governor argues in his responding brief, "the act of deciding which appointments to prioritize is inherently discretionary, as the Governor and his or her advisers have finite time and resources." Indeed, we have recognized one factor distinguishing ministerial and discretionary functions is that "the law which imposes" a ministerial duty "prescribes and defines the time, mode[,] and occasion of its performance with such certainty that nothing remains for judgment or discretion." Vas, 418 N.J. Super. at 522 (quoting Ivy Hill Park Apartments, 221 N.J. Super. at 140). As discussed above, N.J.S.A. 52:27D-305(b) does not prescribe a time limit for filling vacancies on COAH. Accordingly, the relief sought by appellants is not ministerial and cannot issue by mandamus. Further, compelling the Governor to make nominations to COAH would necessarily require establishing a deadline to do so, thereby improperly compelling the "specific manner" of a discretionary act. Vas, 418 N.J. Super. at 522.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0050-22